10-20224.rr

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 10-20224 CR MARTINEZ

UNITED STATES OF AMERICA,

    Plaintiff,
vs.

DEXTER EARL KEMP,

    Defendant.
_____/

### REPORT AND RECOMMENDATION

**THIS MATTER** is before the Court on Defendant Dexter Earl Kemp's Motion to Suppress, filed April 28, 2010 (D.E. 24). The Court has reviewed the Motion and the Response. Additionally, the Court held an evidentiary hearing on May 10, 2010 and May 18, 2010. The Court adopts the transcript of those hearings by reference herein.

### Facts

Defendant moves to suppress evidence obtained in a search of his vehicle during his arrest on November 18, 2009, as well as statements made at some time thereafter.

Miami Gardens Police Officers Carlos Velez and Detective Javier Romaguera testified that on November 18, 2009, as they were completing the execution of a search warrant at a house in Miami Gardens, they observed a silver Nissan Maxima with dark tinted windows driving by the house. Det. Romaguera testified that it appeared that the vehicle was "casing" the residence and the officers performing the search.

Off. Velez testified that he recognized the vehicle as being owned by a person known as "Dex," a convicted felon, (identified as Defendant Dexter Earl Kemp) whom he had previously given

a warning to regarding the illegally tinted windows. Both officers testified that they flagged down the vehicle.

Off. Velez testified that the driver rolled down the window and he recognized Defendant Kemp as the driver. Off. Velez asked Defendant "Didn't I tell you about the window tint?" and told him to pull over. Off. Velez testified that he asked if it was alright for them to look inside the vehicle and Defendant said "yeah, go ahead." Off. Velez alerted K9 Officer Villar, who was standing nearby, to bring K9 Zeus over, and Off. Villar had an interaction with Defendant. K9 Zeus walked around the vehicle and alerted to the trunk. The trunk was then opened and a bud of marijuana was found. Off. Velez testified that at that time, the passenger compartment was searched, and a box of bullets was found. Defendant was given a citation for the windows and signed a promise to appear for the marijuana.

Det. Romaguera testified that after the vehicle was pulled over, he asked Defendant to get out of the vehicle and did a pat-down for officer safety. He also testified that he asked Defendant if there was a problem if they searched the vehicle and Defendant answered that there was no problem. He then told Defendant to sit on the sidewalk and called over K9 Officer Villar and K9 Zeus, who were standing a few feet away. Consistent with Off. Velez, Det. Romaguera testified that the dog alerted to the trunk, Det. Romaguera searched the trunk and located the marijuana. He was not involved in the search of the passenger area.

K9 Officer Villar testified that he was outside of the residence when he observed Off. Velez pull Defendant's vehicle over, and both Off. Velez and Det. Romaguera went to the driver's door. He was approximately ten to fifteen feet from the vehicle when he was asked to walk around the vehicle with K9 Zeus. He asked Defendant whether it was alright and Defendant responded that it was "not a problem." K9 Zeus alerted to the trunk area which was opened and the marijuana was

located. Similarly to the other officers, he testified that it was then that the vehicle was searched and the box of bullets found.

Defendant testified that he was driving by the house when Off. Velez pulled him over and asked him about the tinted windows. Contrary to the officers, Defendant testified that Off. Velez asked him to get out of the car and as he was patting him down all of the officers involved in the search of the residence came over and two officers entered the vehicle through the drivers side and began searching it. He denied ever giving consent to search.

On cross exam Defendant testified that he was down on the ground for a portion of the time and couldn't see. He further testified that the bullets found in the car were not his, and that he was lying when he previously gave a sworn statement to the FBI that he bought the bullets at the gun shop.

## Discussion

Defendant concedes that the stop of his vehicle was legal, but maintains that the subsequent search was unconstitutional.[1]

"It is 'well settled that one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search conducted pursuant to consent.'" United States v. Freyre-Lazaro, 3 F.3d 1496, 1500-01 (11th Cir. 1993) (quoting Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973)). The testimony of all three officers was consistent that Defendant gave verbal consent to search the vehicle. Although Defendant denied consenting, the Court finds that Defendant is not a credible witness, in that he admitted lying to the FBI regarding whether he owned the bullets. Defendant's testimony regarding the manner in which the search occurred also lacks credibility.

---

[1] Defendant bases the request to suppress his subsequent statements solely on the alleged unconstitutionality of the search.

According to Defendant, when his car was pulled over, every state and federal agent/officer involved in the residence search stopped what they were doing and ran out to his vehicle to participate in the search of his vehicle. However, it is uncontested that despite this alleged degree of interest in the Defendant, he was not taken into custody. The Court finds that Defendant is not a credible witness and therefore credits the testimony of the law enforcement agents on this issue, and finds that Defendant did consent to the search of the vehicle.

Alternatively, the Court finds that the limited detention of Defendant for the amount of time that it took K9 Zeus to walk around his vehicle and alert was lawful. See Illinois v. Caballes, 543 U.S. 405 (2005). The testimony was uncontroverted that the dog was on the scene and was brought over within minutes of the stop. Once the dog alerted to the presence of contraband, probable cause existed to search the vehicle. Accordingly, the search of the vehicle and the seizure of contraband was not unconstitutional.

To the extent that Defendant argues that the officers had motives other than to enforce the traffic laws, and "were using a traffic stop as a fishing expedition" (Mot. p. 3), his argument fails. In Whren v. United States, 517 U.S. 806, 809 (1996), the Supreme Court confirmed that the subjective motivation of officers does not invalidate the constitutional reasonableness of a traffic stop based on probable cause to believe a traffic law was violated. Defendant's reliance on United States v. Pruitt, 174 F.3d 1215 (11th Cir. 1999), where the court held that the detention of two defendants and search of their van following a traffic stop was not authorized, is misplaced, in that the facts of Pruitt are clearly distinguishable from this case.

In Pruitt, after validly stopping the defendants' van in Memphis, Tennessee for speeding, the officer placed the driver defendant in his police car, then began asking him questions unrelated to the stop, such as where his family resided in Memphis. The officer then returned to the defendant's

vehicle and asked the other defendant, who was in the front passenger seat, to get the registration and insurance papers. He also asked two other passengers who they were going to visit in Memphis, and their addresses. The officer then returned to his car, where, instead of issuing the defendant's ticket, he asked the defendant additional questions such as who the other passengers were, how much he paid for the van, what he did for a living, whether the passenger defendant was his brother, and why they had different last names. He then asked defendant whether he had anything illegal in the van, and defendant said no. He the specifically asked about weapons and drugs, and defendant again said no. Without having any reasonable suspicion, he then asked if he could search the van and gave defendant a consent form, but defendant declined to sign it. Rather than completing the ticket, the officer called for a drug dog, which did not arrive until one half hour after the initial stop. The dog alerted to the van, which was searched without a warrant, revealing significant amounts of marijuana. Id. at 1218.

The Eleventh Circuit reiterated that in order to comply with the principles of Terry v. Ohio, 392 U.S. 1(1968), once a vehicle is stopped, an officer's "continued detention of the vehicle's occupants is authorized under the Fourth Amendment only if the officer can point to 'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion.'" Id. at 1219 (quoting United States v. Griffin, 109 F.3d 706, 708 (11th Cir. 1997) (per curiam) (citing United States v. Tapia, 912 F.2d 1367, 1370)). The Court noted that "the officer may detain the driver for questioning unrelated to the initial stop if he has an objectively reasonable and articulable suspicion illegal activity has occurred or is occurring", or if the initial detention has become a "consensual encounter." Id. at 1220. Because neither of these were present in Pruitt, and the court found that the officer's additional "fishing expedition" questions were irrelevant and constituted a violation of Terry.

In Pruitt, the focus was on the length and manner of the detention. In the instant case, there was no questioning of Defendant by the officers, other than the request for consent from the Defendant, which apparently came within minutes of the initial stop. There was also no delay in waiting for the drug dog, who was present on the scene. Accordingly, Pruitt does not control. Moreover, in this case, unlike Pruitt, Det. Romaguera testified that it appeared that Defendant's vehicle was "casing" their search of a house for narcotics, providing reasonable suspicion sufficient to detain Defendant for a limited time for purposes of determining whether Defendant may have been associated with that house.

The Court finds that the search of Defendant's vehicle was valid and that the evidence and statements should not be suppressed.

### Recommendation

Accordingly, the Court respectfully recommends that Defendant Dexter Earl Kemp's Motion to Suppress be **DENIED.**

The parties shall have until Friday, May 21, 2010 within which to serve and file written objections, if any, with the Honorable Jose E. Martinez, United States District Judge for the Southern District of Florida. Failure to file objections timely shall bar the parties from attacking on appeal the factual findings contained herein. LoConte v. Dugger, 847 F.2d 745 (11th Cir. 1988), cert.denied, 488 U.S. 958 (1988).

**DONE AND ORDERED** this 19th day of May, 2010, at Miami, Florida.

STEPHEN T. BROWN
U.S. MAGISTRATE JUDGE

cc: Honorable Jose E. Martinez
counsel of record